**O**

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA HAWKINS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMULARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>UGI CORPORATION; AMERIGAS PROPANE, INC.; AMERIGAS PROPANE, L.P.; AMERIGAS PARTNERS, L.P., doing business as AMERIGAS CYLINDER EXCHANGE; FERRELLGAS COMPANY, INC.; FERRELLGAS, L.P., doing business as BLUE RHINO LLC; FERRELLGAS, INC..; FERRELLGAS PARTNERS FINANCE CORP.; FERRELLGAS FINANCE CORP.,<br><br>Defendants. | Case No. CV 14-08461 DDP (JCx)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**<br><br>[Dkt. 61, 64] |

Presently before the court are two separate, but similar, motions to dismiss filed by Defendants UGI Corporation, Amerigas Propane, Inc., Amerigas Propane, L.P., Americas Partners, L.P. (collectively, "Amerigas") and Ferrellgas, L.P., Ferrellgas

Partners, L.P., Ferrellgas, Inc., Ferrellgas Partners Finance Corp., and Ferrellgas Finance Corp. (collectively, "Ferrellgas"). Having considered the submissions of the parties and heard oral argument, the court grants the motions to dismiss the Second Amended Complaint ("SAC") and adopts the following order.

**I. Background**

Amerigas and Ferrellgas (collectively, "Defendants") sell pre-filled propane cylinders to the public at locations such as hardware stores, supermarkets, and gas stations.[1] (SAC ¶¶ 13-14, 28.) Defendants operate cages that allow consumers to drop off "empty" propane cylinders and pick up pre-filled cylinders. (Id. ¶¶ 28, 32.) Alternatively, consumers may refill, rather than exchange, their cylinders at refill stations, although Plaintiffs allege that such stations are no longer readily available in most metropolitan areas. (Id. ¶¶ 29-30.)

Plaintiffs allege, on behalf of a putative class, that Defendants fill propane cylinders with fifteen pounds of propane, even though standard steel propane cylinders can hold over seventeen pounds. (SAC ¶ 20.) Plaintiffs further allege that Defendants' pre-filled propane cylinders bear labels identifying the "net weight" of the cylinders as fifteen pounds. (Id. ¶ 28.) The SAC also alleges that Defendants' cages and other marketing materials instruct consumers to drop "empty" tanks near the cages before obtaining a pre-filled tank from inside the cage. (Id. ¶¶ 32, 36.)

[1] The SAC alleges that the retail stores "may simply have been acting as Defendants' agents . . . ." (SAC ¶ 28 n.1.)

Plaintiffs further allege that Defendants' propane cylinders are not capable of being truly emptied, and that at the time propane-fueled appliances cease to ignite, the cylinders remain, on average, ten percent full. (SAC ¶ 38.) Plaintiffs allege that they did not know that they might not be able to extract the entirety of the fifteen pounds of propane purchased, or that factors such as outside air temperature might affect their ability to extract propane from Defendants' tanks. (Id. ¶¶ 5, 7.) Defendants allegedly know that the cylinders cannot be emptied, but do not inform consumers of that fact. Plaintiffs allege that Defendants can easily implement a point-of-exchange weighing system that would inform consumers how much propane remains in an "empty" tank, but choose not to because Defendants benefit by continually reselling the unused ten percent that remains when consumers drop off "empty" tanks, and Defendants choose not to utilize more efficient delivery technologies so as to continue enjoying that benefit. (Id. ¶¶ 33, 38-39.)

Defendants now move to dismiss all twelve causes of action alleged in the SAC.[2]

**II. Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

[2] Plaintiffs appear to have filed a total of three oppositions to the two motions. Docket Entries 66 and 68 appear to be identical oppositions to Amerigas' motion, even though certain pages identify themselves as part of the opposition to the Ferrellgas motion. Docket Entry 67 is an opposition to the Ferrellgas motion, although the table of authorities therein does not appear to correspond to either of Plaintiffs' memoranda.

662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## III. Discussion

### A. Procedural History and New Allegations

In granting Defendants' motions to dismiss an earlier iteration of the SAC, this court found Plaintiffs' claims

implausible. Specifically, the court found that, given Defendants' up-front, explicit, and undisputedly accurate representation that Defendants' propane cylinders contain fifteen pounds of propane, Plaintiffs could not plausibly allege that consumers were misled as to the amount of propane within the cylinders. (Dkt. 54 at 5.) The court was not persuaded by Plaintiffs' emphasis on usable quantities of propane, as Defendants never made any representation regarding usability or accessibility, and consumers generally know that they may not be able to separate every bit of a product from its packaging. (Dkt. 54 at 5 (citing Ebner v. Fresh Inc., No. SACV 13-477 JVS, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013)). This court also determined that instructions to consumers to drop "empty" tanks off outside Defendants' cages could not plausibly be interpreted as a representation by Defendants that a consumer would be able, contrary to the laws of physics, to utilize every molecule of propane contained within a newly-purchased tank. (Dkt. 54 at 6.)

The allegations of the SAC are not materially different from Plaintiffs' earlier allegations. The SAC does now include allegations about Plaintiffs' subjective state of mind at the time of purchase, including a lack of awareness that they would not be able to use all of the propane they purchased. Although the SAC acknowledges that the average amount of propane remaining in a spent cylinder will vary as a result of environmental factors, it also alleges that this fact is not generally known to consumers, and that consumers have no way to "observe" the amount of propane left in a spent tank. (SAC ¶¶ 31, 45 n. 2.)

The bulk of the new allegations, however, concern Defendants' business practices. Plaintiffs allege, for example, that Defendants have pared back their refilling, as opposed to cylinder exchange, operations. Plaintiffs further allege that Defendants could install a "weighing scale or gage [sic] that would tell the consumers how much propane is left in the 'empty' tanks they are exchanging." (SAC ¶ 33.) The SAC also now alleges that Defendants could utilize new technology to improve the cylinders themselves to allow more complete discharge of propane, or could inform consumers that spent tanks do still contain some propane. (SAC ¶¶ 37, 39, 41.)

B. Plausibility of Fraud-Based Claims

As an initial matter, Plaintiffs' new allegations do little to bolster the plausibility of the previously-dismissed, misrepresentation-based claims. The SAC continues to acknowledge that Defendants' cylinders accurately state, as they must, the net weight of the propane contained therein. The SAC contains no new material allegations regarding Defendants' "empty" cylinder drop-off instructions. As this court explained, the word "empty" appears only in the context of instructing consumers how to complete a tank exchange. It remains implausible that a consumer would interpret instructions regarding what to do with the propane tank in his possession, which may or may not retain sufficient gas pressure to dispense propane, as a representation that he would be able to utilize every last ounce, or any particular percentage, of the new, pre-filled tank he intended to purchase.

Further, and as explained by this court by reference to toothpaste, peanut butter, shampoo, and many other products, the

general consumer is generally aware that she may not be able to extract every bit of a product from its packaging. The same reasoning underpinned the court's decision in Ebner v. Fresh Inc., No. SACV 13-477 JVS, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013), which dismissed claims relating to accurately labeled, difficult to extract lip balm, and was recently affirmed by the Ninth Circuit. See Ebner v. Fresh, Inc., – F.3d –, 2016 WL 1056088 (9th Cir. Mar. 17, 2016). The Ninth Circuit held that a reasonable consumer understands the "general mechanics" of a lip balm dispenser tube, and that "[a]lthough the consumer may not know precisely how much product remains, the consumers' knowledge that *some* additional product lies below the tube's opening is sufficient to dispel any deception . . . ." Ebner, – F.3d – at *6.

Plaintiffs attempt to distinguish the Ninth Circuit's holding in Ebner by arguing that, unlike consumers of lip balm, they have no way to see that any propane is left in an opaque steel cylinder, have no choice but to return partially full cylinders to Defendants, and cannot extract any propane that does remain. These arguments are not persuasive. First, it simply is not the case that consumers of propane have no choice but to yield unused, re-sellable propane to Defendants. Although the SAC does allege that propane refilling stations "are not readily available at all in most metropolitan areas," that vague allegation flies in the face of common sense and experience. Consumers who prefer to retain any supposed benefit of unusable propane can opt to refill their cylinders rather than exchange them at Defendants' cages. Second, even if there were no refilling options available, consumers, like those in Ebner, can determine whether or not any product remains.

Granted, consumers of propane cannot see the amount of product remaining, any more than can purchasers of shaving cream, hairspray, whipped cream, certain sunscreens, and many other products. That inability to visually inspect a propane cylinder's contents does not, however, prevent a consumer from determining whether some product remains. Propane is stored in cylinders in liquid form, and does not evaporate to gaseous form until exposed to normal temperatures and pressures. Even assuming that consumers do not understand the "general mechanics" of pressurized containers, a consumer can determine whether product remains by audibly sloshing remaining liquid around in the cylinder, or by feeling the heft of a partially full cylinder. Those consumers who desire a more accurate determination can simply weigh a cylinder on a standard bathroom or other scale and subtract the tare weight of the cylinder. Thus, regardless of consumers' inability to visually observe the level of product remaining in a cylinder, and as in Ebner, Plaintiffs here cannot plausibly allege that Defendants' admittedly accurate net weight labels or "empty" tank drop-off instructions are fraudulent, deceptive, or misleading.[3] [4]

---

[3] Even if Plaintiffs' claims were plausible, claims based upon net weight labeling or cylinder design would be subject to California's safe harbor doctrine, which bars claims predicated upon conduct affirmatively permitted by statute. Ebner, – F.3d – at *3 (citing Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163 (1999)). Federal regulations expressly permit the steel tank design utilized by Defendants. 49 C.F.R. § 178.51. California law mandates that Defendants label the cylinders' net weight of propane. 4 C.C.R. § 4051(f).

This is not to say, and, contrary to Plaintiffs' characterization, Defendants do not argue, that the safe harbor doctrine immunizes Defendants from any and all possible claims under the CLRA, FAL, or UCL.

[4] Plaintiffs have not adequately alleged claims based upon an (continued...)

C. Unfair Business Practices

Plaintiffs contend that, even if their fraud-based claims fail, they have adequately pleaded a claim for unfair competition under California Business & Professions Code § 17200, which proscribes "unfair" acts as well as unlawful or fraudulent ones. See Cel-Tech, 20 Cal.4th at 180. Plaintiff's "unfair prong" claim centers on Defendants' alleged "withholding from Plaintiffs . . . credits earned for unused propane . . . and practice of withholding leftover propane and reutilizing it for their own profits . . . ." (SAC ¶ 72.)

California courts have applied differing tests in determining whether a business practice is "unfair." See Hodsdon v. Mars, Inc., – F.Supp.3d –, 2016 WL 627383 at * 7 (N.D. Cal. Feb. 17, 2016); Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 593-97 (2009). One common, relatively less burdensome test finds a business practice unfair if the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Hodsdon, – F.Supp.3d at * 7 (quoting S. Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886-87 (1999) (internal quotation marks omitted). Looking to the practice's impact on the alleged victim, the reasons and justifications for the practice, and the motives of the alleged wrongdoer, "the court must weight the utility of the defendant's conduct against the

[4](...continued) omission. Under California law, manufacturers only bear a duty to disclose information related to safety concerns. Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1142 (9th Cir. 2012).

gravity of the harm . . . ." S. Bay Chevrolet, 72 Cal. App. 4th at 886 (internal quotation and citation omitted).

Plaintiffs point to two alleged harms to consumers. First, although contending that they are "well tethered to the reality that products often adhere to the inside of their containers," Plaintiffs nevertheless argue that an alleged ten percent rate of unusable propane is an "exorbitant amount."[5] (Opp. to Amerigas mot. at 17.) This supposed harm is premised upon the assumption that Plaintiffs have no choice but to yield any inaccessible propane to Defendants. As discussed above, that is not the case, as propane consumers may opt to refill, rather than exchange, their propane cylinders, thus retaining the unusable portion of propane for themselves. See, e.g. Tietsworth v. Sears, 720 F.Supp.2d 1123, 1139 (N.D. Cal. 2010) (explaining, in unconscionability context, that "any claim of oppression may be defeated if the complaining party had reasonably available alternative sources of supply from which to obtain the desired goods or services . . . ." (internal quotation and citation omitted)).

Second, and in Plaintiffs' minds, more importantly, Plaintiffs assert that they are harmed by their inability to "see how much propane remains in the tank when it was no longer able to start a fire." (Opp. to Amerigas mot. at 17.) As also explained above, consumers' ability to determine whether, or even how much, propane remains in a cylinder is not dependent upon visual observation. The harms alleged here are not particularly severe.

---

[5] This argument contradicts the SAC, which alleges that Plaintiffs "never realized [they] would not be able to utilize all of the propane [they] were purchasing . . . ." (SAC ¶¶ 5, 7 (emphasis added).)

Nor do the justifications for Defendants' business practices strike this court as particularly nefarious. At present, consumers drop their tanks off outside Defendants' cylinder cages. A retail store employee then unlocks the cage and hands the consumer a filled cylinder, for which the consumer later pays at a point of sale. Plaintiffs request that Defendants implement a measurement and credit system whereby the retail store employee would first weigh or otherwise assess consumers' old cylinder, determine the weight of any remaining propane, calculate the value of that propane, and then issue a credit, specific to that cylinder, to the consumer, who presumably would later seek to apply that credit to the newly purchased cylinder at a point of sale, or perhaps "cash out" instead. The justifications for, and utility of, Defendants' relatively streamlined system appear obvious when contrasted with the more complicated, time-consuming, and likely costly mechanism Plaintiffs propose. Given the balance of the relevant factors, Plaintiffs have not plausibly alleged an unfair business practice.

D. Other Claims

Among the claims Defendants move to dismiss are Plaintiffs' claims for "Violation of Consumer Fraud Laws of Several States Except for California," breach of contract and "Breach of Express Warranties of Each State," violation of the Magnuson-Moss Warranty Act, violation of California's Song-Beverly Consumer Warranty Act, unjust enrichment, and money had and received. Although Plaintiffs refer to Defendants' arguments in passing, they provide no substantive opposition or arguments of their own. The court

construes this failure as a waiver of those claims.[6] See Rodriguez v. Federal Nat'l Mortgage Assoc., No. 15-cv-04890-ODW, 2015 WL 9582539 at *2 (C.D. Cal. Dec. 29. 2015).

**IV. Conclusion**

For the reasons stated above, Defendants' Motions to Dismiss are GRANTED. The Second Amended Complaint is DISMISSED, with prejudice.

IT IS SO ORDERED.

Dated: May 4, 2016

DEAN D. PREGERSON
United States District Judge

[6] The closest Plaintiffs come to a substantive opposition is, with respect to their contract and warranty claims, a statement that "[A]ny act that a person may do may be done through an agent." (Opps. at 23.) Even assuming that Plaintiffs are referring to retailers who host cylinder cages, the SAC only alleges, in a footnote, that such retailers "may" have been acting as agents, without any factual support or allegations regarding contracts or warranties entered into by any supposed agent. See n.1, supra.